O

# United States District Court
# Central District of California

| | |
|---|---|
| MYRA STEEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN NATIONAL INSURANCE COMPANY, <br><br> Defendant. | Case № 2:20-cv-11226-ODW (SKx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PARTIALLY DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [36]** |

## I. INTRODUCTION

Plaintiffs Myra Steen and Janet Williams bring this putative class action against Defendant American National Insurance Company, filing the operative First Amended Complaint ("FAC") on November 24, 2021. (FAC, ECF No. 30.) American National moves, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), to dismiss certain claims in Plaintiffs' FAC. (Mot. Dismiss ("Mot."), ECF No. 36.) After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons that follow, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## II.    BACKGROUND

For purposes of this Rule 12(b)(6) motion, the Court accepts Plaintiffs' well-pleaded allegations as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

American National sells life insurance policies. (FAC ¶ 12.) Plaintiff Steen owns five life insurance policies purchased from American National. (FAC ¶ 24.) Steen is also the beneficiary and successor-in-interest to a policy insuring the life of her daughter Janice Williams, who died on June 20, 2020. (FAC ¶¶ 24, 30.) The total value of Steen's policies is approximately $90,000. (FAC ¶ 26.)

Plaintiff Janet Williams is also Steen's daughter. She owns four life insurance policies purchased from American National. (FAC ¶ 25.) The value of her policies is between $95,000 to $145,000.[1] (FAC ¶¶ 25, 26.)

Plaintiffs paid their monthly premiums to American National's agent, Khalid Ibrahim, who traveled to Plaintiffs' homes and places of work to collect cash payments. (FAC ¶¶ 24, 28.) At an unspecified time, Plaintiffs heard rumors that American National had terminated Ibrahim's employment but that he was continuing to collect money from Plaintiffs under the false pretense of collecting insurance premiums. (FAC ¶ 28.) Thereafter, also at an unspecified time, Plaintiffs contacted American National and discovered for the first time that the Policies had lapsed for nonpayment. (*Id.*)

After Steen's daughter Janice died, Steen submitted a claim to American National for the policy insuring Janice's life, which American National denied for nonpayment of the premium.[2] (FAC ¶ 30.)

The Policies provide for a grace period of thirty-one days during which the insurance policy will remain in force despite defaulting on a premium payment.[3]

---

[1] Hereinafter, the Court refers to all policies of both Plaintiffs collectively as the "Policies." (*See, e.g.*, FAC ¶ 26.)

[2] It is not clear from the FAC whether Steen was aware, at the time she submitted her claim for death benefits for Janice, of American National's position that that policy had lapsed.

[3] Plaintiffs attached the Policies to, and referenced the Policies throughout, the FAC. Moreover, the Policies form the basis of Plaintiffs' claims. (FAC Exs. B–J.) Accordingly, the Court may properly

(FAC ¶ 27.)  However, Plaintiffs contend they are entitled under California Insurance Code sections 10113.71 and 10113.72 to greater procedural safeguards, including a sixty-day grace period after a missed payment, a thirty-day written notice of pending lapse, and the annual right to designate a third party to receive such notice.  (FAC ¶¶ 3, 16–17.)   These statutory requirements were enacted January 1, 2013.  American National took the position that the requirements did not apply to policies executed before January 1, 2013 (as opposed to applying more broadly to all policies in effect as of January 1, 2013).  Plaintiffs' Policies in this case were executed before January 1, 2013, and American National accordingly did not adjust its practices to provide a longer grace period and otherwise comply with the requirements of sections 10113.71 and 10113.72 with respect to Plaintiffs' Policies.  (FAC ¶¶ 5, 17.)

Plaintiffs' Policies lapsed sometime in 2017, but American National failed to provide Plaintiffs with the required grace period and notice prior to lapse.  (FAC ¶¶ 29, 31, 32.)  Plaintiffs assert that because American National failed to provide the requisite safeguards, "the termination of [t]he Policies was ineffective[,] and [t]he Policies remain in force."  (FAC ¶ 34.)

Plaintiffs now seek relief for themselves and for a proposed class of "[a]ll past, present, and future owners or vested beneficiaries of Defendant's life insurance policies in force on or after January 1, 2013 and governed by [California Insurance Code] [s]ections 10113.71 and/or 10113.72, where Defendant lapsed, terminated, or forced the reinstatement of the policy on the basis of nonpayment of premium[s]."  (FAC ¶ 37.) Previously, the Court stayed this case pursuant to the parties' stipulation to await the California Supreme Court's decision in *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213 (2021) to resolve the question of the applicability of California Insurance Code sections 10113.71 and 10113.72 to policies executed before the enactment of those statutes.  After the *McHugh* decision issued, the parties stipulated to lift the stay on the

---

refer to these documents under the doctrine of incorporation by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

case, and Plaintiffs proceeded to file their FAC, taking into account the decision in *McHugh*.

In the operative FAC, Plaintiffs assert claims for (1) declaratory relief under California law, (2) declaratory relief under federal law, (3) breach of contract, (4) violation of California's unfair competition law ("UCL"), and (5) conversion. (*See* FAC ¶¶ 50–96.) American National moves to dismiss claims one, two, four, and five. After fully briefing the Motion, (Opp'n, ECF No. 40; Reply, ECF No. 43), Plaintiffs filed a Notice of Supplemental Authority, (ECF No. 54), and American National filed three additional Notices of Supplemental Authority, (ECF Nos. 53, 55, 56).

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2). Rule 8(a)(2) requires only that the complaint include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)). Under this standard, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted

deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (noting leave to amend "is properly denied . . . if amendment would be futile").

## IV.   DISCUSSION

Plaintiffs' claims in this case are grounded in the California Supreme Court's recent decision in *McHugh*. There, the court concluded that the protections afforded under Insurance Code sections 10113.71 and 10113.72 extend to policies in effect as of January 1, 2013, even if executed and issued before that date. 12 Cal. 5th at 246. More recently, in an unpublished opinion, the Ninth Circuit, relying on *McHugh*, affirmed a trial court's decision granting a beneficiary's motion for summary judgment for breach of contract against an insurer, finding the policies at issue had not lapsed because the insurer failed to comply with sections 10113.71 and 10113.72. *Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 WL 459686, at *1 (9th Cir. Oct. 6, 2021).

American National's Motion is not based on the law embodied in *McHugh*—and unsurprisingly so, given that the *McHugh* decision favors Plaintiffs and insureds in

5

general. Instead, American National argues that, for various other reasons, Plaintiffs fail to state claims for declaratory relief, UCL violations, and conversion.

### A.     First and Second Claim: Declaratory Relief

By way of their first and second claims, Plaintiffs seek a declaration that California Insurance Code "[s]ections 10113.71 and 10113.72 applied as of January 1, 2013, to American National's California policies in force as of or at any time after January 1, 2013," and that American National's "attempts to repudiate the policies or treat them as terminated or lapsed, were and are ineffective." (FAC ¶¶ 58, 64.) Plaintiffs allege that a judicial declaration is necessary to determine: (1) the rights and duties under class members' policies, (2) the terms and conditions of restoration of class members' policies, (3) "whether [the] policies were legally in force at the time of deaths of insureds," and (4) "whether beneficiaries were wrongfully denied payments of benefits under their policies or will be wrongfully denied benefits should benefits become due in the future and before Defendant starts properly applying the Statutes." (FAC ¶¶ 59, 65.)

The federal Declaratory Judgment Act permits district courts, "[i]n a case of actual controversy," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought or could be sought." 28 U.S.C. § 2201. Under California's parallel act, courts "may make a binding declaration of . . . rights or duties, whether or not further relief is or could be claimed at the time." Cal. Civ. Proc. Code § 1060. Courts in the Ninth Circuit have observed that the "two statutes are broadly equivalent." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (acknowledging federal Declaratory Judgment Act governs analysis of claims seeking declaratory relief even if brought under California Declaratory Relief Act). Declaratory relief "is appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Molde-Duque v. HH Riverside Prop. LLC*, No. EDCV

20-2678 JGB (SPx), 2021 WL 2791612, at *4 (C.D. Cal. Apr. 2, 2021) (*quoting McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966)).

American National moves to dismiss Plaintiffs' declaratory relief claims on the grounds that these claims are "derivative and duplicative" of the breach of contract claim. (Mot. 6.) American National argues that the "question of whether the Policies should have remained in force despite Plaintiffs' non-payment of premiums will be determined via Plaintiffs' breach of contract claim." (Mot. 7.)

These arguments are flawed. Strictly speaking, the declaratory relief claims are not duplicative of the breach of contract claim, in that the former raises legal issues that the latter does not necessarily raise. On a basic level, a breach of contract claim provides relief for violation of a contract term, not a statute; by contrast, the declaratory relief claims are a natural vehicle by which to bring before the Court the question of American National's ongoing and future statutory duties to the class.

Although there may be some overlap, American National's argument ignores the alleged future uncertainty that declaratory judgment would remedy that would not be remedied by damages for breach of contract. The court in *Siino v. Foresters Life Ins. & Annuity Co.*, No. 20-cv-02904 JST, 2020 WL 8410449 (E.D. Cal. Sept. 1, 2020), rejected a similar attempt by a defendant to obtain dismissal of declaratory relief claims. *Id.* at *7. There, the court reasoned that a breach of contract claim allows a party to obtain damages as a remedy to redress past wrongs, but a "declaration of rights and duties is forward-looking, intended to determine [the defendant's] continuing duties to the class." *Id.*; *see also StreamCast Networks, Inc. v. IBIS LLC*, Case No. CV 05-04239 MMM, 2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006) ("Declaratory relief is designed to resolve uncertainties or disputes that may result in future litigation."). Here, as alleged, to the extent American National continues to refuse to comply with the lapse and notice requirements as to all policies executed before January 1, 2013, declaratory relief is necessary to resolve the question of the insureds' current rights before the controversy leads to any future harm. (*See* FAC ¶¶ 59, 65.)

Moreover, some members of the class have had their policies reinstated with less favorable terms than those of the policies they held before the lapse. (FAC ¶ 72.) Some of these reinstated policies are still in effect, and declaratory relief is appropriate to resolve the ongoing controversy and the potential harm that may continue to accrue.

Accordingly, the Court **DENIES** American National's Motion with respect to Plaintiffs' first and second claims.

B.  **Fourth Claim: Violations of the UCL**

In their fourth claim for relief, Plaintiffs allege violations of California's UCL. (FAC ¶¶ 75–86.) The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). The "unfair" prong "creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d at 1226.

Plaintiffs assert that American National committed and continues to commit several unlawful and unfair acts. (*See* FAC ¶¶ 77–80.) Specifically, Plaintiffs allege that American National is in violation of the California Insurance Code and "continues to conceal and mislead the policyholders and beneficiaries [regarding] the existence of continuing coverage or benefits, . . . a right to a 30-day lapse warning, a right to a 60-day grace period, [and] a right to an annual designation." (FAC ¶ 79.) Plaintiffs also allege that American National retained and continues to retain premiums and unpaid policy benefits and that American National committed "deceptive acts by affirmatively and erroneously telling class members . . . that their policies had grace periods of less than 60 days" or "that their policies have lapsed or terminated." (FAC ¶ 80.)

American National argues Plaintiffs cannot maintain a claim under the UCL because they fail to allege facts to support either restitution or injunctive relief—the only two remedies available under the UCL statute—and therefore lack standing to bring this claim. (Mot. 9–14.) American National also argues that Plaintiffs fail to allege they lack an adequate remedy at law. (*Id.* at 9, 11–12.) As set forth below, both these arguments are unavailing. Accordingly, the Court denies American National's motion as to the UCL claim without reaching whether Plaintiffs are also entitled to restitution.[4]

### 1. *Standing to Seek UCL Injunction*

American National argues that Plaintiffs lack standing to seek injunctive relief because they have not alleged a "realistic threat that they will be subjected to repeated violations of the UCL[.]" (Mot. 13.) This argument is unavailing; Plaintiffs have standing to seek injunctive relief.

To establish standing under Article III of the United States Constitution, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 50 U.S. 555, 560–61 (1992)). To establish standing to seek injunctive relief, a plaintiff must "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.'" *Joslin v. Clif Bar & Co.*, Case No. 18-cv-04941-JSW, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). "In a

---

[4] Although the Notice of Motion makes clear that this is a "Partial Motion to Dismiss" in that it is directed toward some but not all of Plaintiffs' claims, the Notice of Motion does not indicate that American National seeks partial, or piecemeal, dismissal of the UCL claim (or any other individual claim). (Notice Mot. 2, ECF No. 36.) In the portion of its Memorandum opposing the UCL claim, American National argues against both injunctive relief and restitution without arguing for or suggesting piecemeal dismissal of the UCL claim. The Court will not grant piecemeal dismissal of the UCL claim without clear notice to the nonmoving party and a more fulsome treatment of the propriety of piecemeal dismissal.

class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates*, 511 F.3d at 985.

Plaintiffs allege that they are entitled to injunctive relief "against Defendant's ongoing business practices, as well as a mandatory injunction requiring Defendant to pay all benefits owed at the time they are owed." (FAC ¶ 83, Prayer for Relief ¶ 3.) In response, American National reads the FAC as Plaintiffs "conced[ing] that their Policies have lapsed" and correspondingly implying that they cannot establish a threat of repeated violations because "the Policies cannot lapse again." (Mot. 13.) This is a narrow, inaccurate, and somewhat sophistic reading of the FAC. To the contrary, as alleged in detail, Plaintiffs purchased Policies insuring their own lives and the lives of others, most of whom are still living, and, even though American National did not provide Plaintiffs with the required notices or grace periods, it continues to treat the Policies as lapsed. (*See* FAC ¶¶ 24, 25, 29.) Under *McHugh* and *Thomas*, the allegations go, American National's "cancellation of thousands of California policies was and is now completely ineffective" and American National "wrongfully denied righteous claims for benefits on in-force policies, as it did Plaintiffs." (FAC ¶¶ 5, 21; *see id.* ¶ 20 (alleging American National continues to "disavow[] scores of policies" without first complying with the statutes).) Under a fair reading of Plaintiffs' FAC, the Policies remain in force, which in turn supports the plausible inference that Plaintiffs could find themselves in the same situation again upon the death of a different insured, should American National continue to disavow and repudiate policies without first complying with the statutes.

In its Motion, American National relies on cases that predate the California Supreme Court's holding in *McHugh* and the Ninth Circuit's holding in *Thomas*. (*See* Mot. 13–14.) To the extent *McHugh* did not overrule these cases, the Court nevertheless finds them unpersuasive, as they are based on policy lapses not factually analogous to the lapses in the present case. American National's supplemental authorities are also distinguishable on the facts. For example, in *Small v. Allianz Life Ins. Co.*, No. CV 20-

01944 TJH (KESx) (C.D. Cal. Mar. 29, 2022), the court found the plaintiff lacked standing for injunctive relief in part because she "did not allege that she has another . . . life insurance policy that could be at risk of termination for non-payment of premiums." (Notice Suppl. Authority (*Small*) Ex. A at 2–3, ECF No. 53.)  Here, obviously, that is not the case, as Plaintiffs allege they have active, unlapsed Policies currently insuring the lives of living individuals.  Similarly, in *Grundstrom v. Wilco Life Insurance Co.*, No. 20-cv-03445-MMC, 2022 U.S. Dist. LEXIS 69944 (N.D. Cal. Apr. 15, 2022), the court dismissed a claim for a UCL injunction because, although the plaintiff alleged continuing harm to the class, there was no indication the plaintiff individually had other insurance policies or "any future relationship" with the defendant to support a realistic threat of repeated wrongful conduct. (Notice Suppl. Authority (*Grundstrom*) Ex. A at 3, ECF No. 55.)  *Grundstrom* does not apply here for the same reason *Small* does not apply here:  Plaintiffs allege that they both have other life insurance policies; that under the California Insurance Code, they both remain as beneficiaries of in-force life insurance policies provided by American National; and that, accordingly, both their relationships with American National continue to the present day.

A plausible inference of Article III standing arises from the FAC, and the Court will not grant the Motion on this basis.

       2.     *Adequate Remedy at Law*

In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL[.]" 971 F.3d 834, 844 (9th Cir. 2020).  Following *Sonner*, this Court in *Haas v. Travelex Insurance Services Inc.*, 555 F. Supp. 3d 970, 976 (C.D. Cal. 2021) had occasion to consider the effect of *Sonner* on pleading UCL claims in a different context.  This Court noted that the presence of injunctive relief "distinguishe[d] the case from" the Ninth Circuit's holding in *Sonner*.  *See Haas*, 555 F. Supp. 3d at 976.  The reason was that injunctive relief *is itself* a remedy not available at law, and, as long as the injunctive relief sought is not completely duplicative of the

11

plaintiff's legal claims, *Sonner* does not apply, and the plaintiff is not prohibited from pleading in the alternative. *Id.* at 980.

Here, Plaintiffs' claim for a UCL injunction is <u>not</u> completely duplicative of their legal claims, for largely the same reason their request for declaratory relief is also not duplicative of their legal claims. Plaintiffs seek prospective injunctive relief requiring American National to (1) acknowledge that their policies remain in force, (2) stop wrongfully terminating policies in violation of the California Insurance Code, and (3) pay benefits when they become due. (FAC ¶¶ 77, 83–84.) Plaintiffs will not be made whole even if they succeed on their breach of contract claim because contract damages would remedy past alleged harm without addressing the threat of continuing harm. (FAC ¶¶ 20, 23, 57, 83); *cf. Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 686–87 (N.D. Cal. 2021) (finding "that monetary damages for past harm are an inadequate remedy for the future harm [at which] an injunction under California consumer protection law is aimed").

Therefore, the Court **DENIES** American National's Motion as to the UCL claim.

### C. Fifth Claim: Conversion

Plaintiffs' fifth claim for relief is for conversion. (FAC ¶¶ 87–96.) Under California law, conversion is "the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1161 (9th Cir. 2017) (quoting *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)), *as amended on reh'g*, 868 F.3d 1048 (9th Cir. 2017). The elements of a conversion claim are: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019). Generally, "money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved." *Id.* at 1151; *see Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1024 (N.D. Cal. 2008) ("[W]hen the money is not

identified and not specific, the action is to be considered as one upon contract or for debt and not for conversion." (internal citations omitted)).

Here, Plaintiffs' conversion claim rests on two theories, neither of which supports a plausible claim for conversion.

Plaintiffs' first theory is that American National converted the Policies' benefits after the death of an insured and after Plaintiffs demanded those benefits. (FAC ¶¶ 90–91.) This theory fails because in order to state a claim for conversion, a plaintiff "must allege . . . entitle[ment] to immediate possession at the time of conversion." *See United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1194 (N.D. Cal. 2016). "[A] mere contractual right of payment, without more, will not suffice." *Id.* (*quoting Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997)). Here, any right to benefits arises from the Policies themselves. Plaintiffs have not alleged anything indicating that their right to benefits is anything more than "a mere contractual right of payment," *Zerin*, 53 Cal.App.4th at 452, and they therefore have no claim for conversion under this theory.

Plaintiffs' second theory is based not on death benefits but instead on the premiums they paid to American National; they argue that these premiums are money or property American National allegedly converted. Plaintiffs assert that the California Insurance Code requires that premiums paid to insurance companies "be held in trust or reserve by the insurance company, at least in part, in segregated and restricted reserve accounts" and that by terminating the Policies, American National had "cover to then transfer the specific trust and reserve funds properly belonging to Plaintiffs and class members, out of these reserve accounts, and into Defendant's own general accounts." (FAC ¶ 92.) Plaintiffs additionally argue that American National converted the Policies themselves, when American National "wrongfully lapsed, terminated, or repudiated them." (FAC ¶ 89.)

However, Plaintiffs fail to allege entitlement to immediate possession of the alleged premiums paid at the time of the conversion. *See United Energy Trading, LLC*

*v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1194 (N.D. Cal. 2016). Even if the Court accepts Plaintiffs' rather far-afield allegations regarding American National's obligation to hold premiums in a reserve or trust, Plaintiffs nevertheless fail to allege a right to *immediately* possess premiums paid as consideration for continuing life insurance coverage. Rather, the conversion claim amounts to no more than one for reimbursement of premiums after a wrongful repudiation, and case law makes clear that a mere right of reimbursement is insufficient to constitute a tangible property right to support a conversion claim. *See Zerin*, 53 Cal. App. 4th at 452; *see Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020) ("An obligation to pay money, like Plaintiff's claim for partial tuition reimbursement, is insufficiently tangible to qualify as property under these facts."); *see also Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D Cal. 2021) (finding no claim for conversion "for breach of duties that merely restate . . . contractual obligations," where student sought partial refund from college for not providing in-person education during COVID-19).

Pushing back, Plaintiffs argue that "continuing coverage under the policy where the insured is alive" itself constitutes converted property. (Opp'n 29.) However, Plaintiffs fail to plausibly allege they had a right to immediately possess the cash value of the Policies when American National terminated them. Plaintiffs further fail to demonstrate that "continuing coverage" under the Policies is a property interest that is specific and identifiable, as opposed a mere contractual right to payment of benefits in the future. *See Sullivan v. Transamerica Life Ins. Co.*, No. 21-CV-00645, 2021 WL 2000301, at *7 (C.D. Cal. May 17, 2021) (finding plaintiffs failed to state a claim for conversion under both Kentucky and California law because "plaintiffs never had a possessory interest in the initial face amounts [of the insurance policies]—rather, they had a contractual right to that amount at the death of the insureds").

For these reasons, the Court **GRANTS** the Motion as to the conversion claim. Out of an abundance of caution, the Court will provide Plaintiffs **with leave to amend** this claim to address the above-discussed deficiencies. *See Manzarek*, 519 F.3d at

1034–35. That said, the Court expects both parties to fully participate in meet-and-confer efforts and endeavor to avoid the need for further motion practice on what appears to be an issue tangential to the gravamen of the case.

## V. CONCLUSION

For these reasons discussed above, Defendant's Motion to Partially Dismiss is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 36.) The conversion claim is **DISMISSED with leave to amend**. The remainder of Defendant's Motion is **DENIED**.

If Plaintiffs choose to amend, their Second Amended Complaint is due no later than **twenty-one (21) days** from the date of this Order. If Plaintiffs do not amend, then (1) Defendant's Answer is due **fourteen (14) days** from the date the Second Amended Complaint would have been due, and (2) the dismissal of the conversion claim shall be deemed a dismissal with prejudice as of the lapse of Plaintiffs' deadline to amend.

**IT IS SO ORDERED.**

June 30, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**